Anton N. Handal, Cal. Bar No. 113812
Pamela C. Chalk, Cal. Bar No. 216411
Gabriel G. Hedrick, Cal Bar No. 220649
**HANDAL & ASSOCIATES**
Civic Center Plaza
1200 Third Avenue, Suite 1321
San Diego, CA 92101
619.544.6400
619.696.0323 Fax

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLIGHT CONSUMER ELECTRONICS (USA), INC., (on its own behalf and on behalf of HANG SENG BANK) <br><br> Plaintiff, <br><br> vs. <br><br> PETTERS CONSUMER BRANDS, LLC, and DOES 1 through 100. <br><br> Defendants | Case No. 07CV02102 IEG (RBB) <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR AN ORDER COMPELLING ARBITRATION** <br><br> Date: January 14, 2008 <br> Time: 10:30 a.m. <br> Judge: Hon. Irma E. Gonzalez <br> Ctrm: 1 |

## INTRODUCTION

Defendant's motion to compel arbitration relies on one fatal assumption:  that this action is premised on a manufacturing agreement between it and Plaintiff.  As set forth in the complaint and herein, this is clearly not the case.  This action is brought by Starlite, not as a party to an agreement with Petters, but as an assignee of Hang Seng Bank.  Hang Seng Bank is not party to any agreement to arbitrate with Petters.  Plaintiff therefore respectfully requests that Defendant's motion for an order compelling arbitration be denied.

///

-1-

## STATEMENT OF FACTS

Plaintiff Starlite Consumer Electronics (USA), Inc. ("Starlite") is a subsidiary of Starlight Holdings, Ltd. which manufactures and exports consumer electronics products including CD players, boom-boxes, televisions, etc.

In or around January 2005, Defendant Petters Consumer Brands, LLC ("Petters") approached Starlite for the purpose of sourcing DVD players for sale to its customers in the United States under the Polaroid brand. *See* Complaint, ¶9. Petters requested 60-day net terms from Starlite such that Starlite would agree to accept purchase orders for and manufacture the goods while allowing payment up to 60 days after delivery. *Id.* at ¶10. Starlite refused Petters' proposal. *Ibid.* Starlite then suggested to Petters that, if Starlite's bank would approve Petters under a factoring arrangement, e.g., if the bank would pay Starlite's invoices on behalf of Petters against future payments from Petters, then Starlite would agree to accept purchase orders from Petters. *Ibid.*

In or around February 2005, Starlite and Petters entered into a manufacturing agreement whereby Petters granted Starlite a *right* to manufacture certain Petters brand products ("Manufacturing Agreement"). *See* Exhibit B to Petters' motion (Docket No. 3). The Manufacturing Agreement was not a purchase agreement. Under the terms of the agreement, Starlite was not required to manufacture any products for Petters. *Ibid.* It did not establish any purchase prices. *Ibid.* The Manufacturing Agreement covers the scope of Starlite's manufacturing rights, quality standards, price protections, shipping requirements, warranty terms, servicing of defective goods, etc. *Ibid.* In all material respects, it lays out pre-conditions for the right of Starlite to manufacture Petters brand goods. It makes no mention of the proposed factoring arrangement.

On or about June 25, 2005, Hang Seng Bank, in consideration of the strength of the Polaroid brand name, agreed to factor the Petters' account (the "Factoring Agreement"). *See* Exhibit C to Complaint. The Factoring Agreement was fully and finally executed July 8, 2005. *See* Exhibit A to the Declaration of Gabriel G. Hedrick. Petters was the intended beneficiary under the terms of the Factoring Agreement. The Factoring Agreement essentially provided

Petters with a mechanism for financing its purchases of goods from Starlite. Petters knew of the arrangements for the Factoring Agreement and encouraged Starlite and Hang Seng Bank to create this financing vehicle for its sole and exclusive benefit. *Id.* at ¶13. On June 28, 2005, before Petters ever submitted a purchase order to Starlite, Starlite notified Petters it had secured the Factoring Agreement contemplated by the parties. *Id.* at ¶14 and Exhibit C thereto. In fact, no purchase orders were placed by Petters until the Factoring Agreement was entered into. *Id.* at ¶15.

Consistent with the terms of the Factoring Agreement, Petters began placing purchase orders with Starlite. Starlite would, in turn, tender the purchase orders to Hang Seng Bank which would then advance to Starlite the value of the Petters' purchase order less interest, costs and expenses. *Ibid.* As directed by Petters, Starlite shipped the goods directly to Petters' customers. *Id.* at ¶16. Consistent with the understanding of the parties, Starlite would then issue invoices to Petters. *See, e.g.*, Exhibit E to the Complaint. Each invoice directed Petters to pay Hang Seng Bank pursuant to the terms of the Factoring Agreement. *Id.* at ¶17. Petters acknowledged that Hang Seng Bank had already paid Starlite and, thus, would directly pay such invoices in the normal course to Hang Seng Bank – not Starlite. *Ibid.* Hang Seng Bank, pursuant to the agreement reached, accepted these payments and credited Petters' account accordingly. *Ibid.*

In or about July 2006, Petters began to fall behind on its payments to Hang Seng Bank. As of August 1, 2006, Petters had failed to make payment on $1,370,097 worth of invoices for goods which had been shipped to Petters' customers. Hang Seng Bank made numerous demands on Petters to make good on the above described open account to no avail. *Id.* at ¶19.

Having received no payment from Petters, Hang Seng Bank, thereupon, pursuant to the terms and conditions of the Factoring Agreement, made demand on Starlite to fulfill Petters' open balance and has authorized Starlite to pursue collection of said invoices on its behalf. *See* Exhibit A to Complaint. Notwithstanding Petters' attempts to spin the basis of this action as arising from the Manufacturing Agreement, Hang Seng Bank - not Starlite - is the real party in interest.

///

*PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION*    Case No. 07CV02102 IEG (RBB)
*FOR AN ORDER COMPELLING ARBITRATION*

**LEGAL STANDARD**

To compel arbitration, Petters is required to show that "[1] a valid agreement to arbitrate exists, [2] that it is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." *Intergen v. Grina*, 344 F.3d 134 (1st Cir. 2003). Petters fails to satisfy the third and fourth prerequisites for compelling arbitration.

**HANG SENG BANK, THE REAL PARTY IN INTEREST, IS NOT BOUND BY THE ARBITRATION CLAUSE CONTAINED IN THE MANUFACTURING AGREEMENT**

" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed. 2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960). As the complaint makes clear, Hang Seng Bank is the real party in interest in this action. Petters does not and cannot cite to any agreement to which Hang Seng Bank is a signatory that requires it to arbitrate any claims it has against Petters.

There are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference. *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir.1986); *see also Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir.2002); *accord Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir.1999). Petters broadly argues that a nonsignatory may be bound by an arbitration clause "under ordinary contract principles" but leaves the Court and Starlite to guess as to the principle on which Petters seeks to bind Hang Seng Bank. It appears, based on Petters limited and conclusory argument that it seeks to bind Hang Seng Bank to the arbitration clause contained in the Manufacturing Agreement based on the doctrines of agency and assignment.[1] Neither are applicable here.

---

[1] Petters argues that Hang Seng Bank "as an assignee [of Starlite] ... stands in the shoes" of Starlite which suggests an agency theory. Clearly Starlite did not assign its rights under the Manufacturing Agreement – Hang Seng Bank

*PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION*
*FOR AN ORDER COMPELLING ARBITRATION*

Case No 07CV02102 IEG (RBB)

A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778 (2d Cir.1995); *accord Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). However, the party to be estopped must have received a *direct* benefit under *the contract containing an arbitration clause*. *Thomson-CSF, supra* at 779 [holding that although the unwilling party received a benefit, the benefit did not derive directly from the agreement containing the arbitration clause and thus arbitration could not be compelled].

The Manufacturing Agreement is not a purchase agreement. It does not impose on the signatories any obligation to deliver a product or make payment for same. *See, e.g.*, p. 5, §4(a) of the Manufacturing Agreement attached as Exhibit B to Coates Dec. [providing that the manufacturer has a right to accept or reject purchase orders submitted by Petters]. Instead, the essential benefit of the Manufacturing Agreement is that it affords a manufacturer the right to manufacture Petters brand products. *See* Exhibit B to Declaration of Christina Coates filed by Defendant, p. 1, second paragraph. However, Hang Seng Bank never manufactured nor sought to manufacture any Petters brand products. The benefit derived by Hang Seng Bank under the facts of the present case was the collection of interest, costs and fees which benefit was derived from the Factoring Agreement *not* the Manufacturing Agreement. *See Thomson-CSF, supra*, 64 F.3d at 779 [denying motion to compel arbitration where benefit received by nonsignatory was derived from separate transaction and not directly from the agreement containing the arbitration clause]; *see also Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 688 (7th Cir. 2005) [where only benefit received by non-signatory under an agreement containing an arbitration clause was attenuated and indirect, non-signatory was not estopped from avoiding arbitration].

This point is illustrated by examining what would happen if Petters asserted a claim against Hang Seng Bank arising from the arrangement amongst the three parties. What if, for example, Petters had inadvertently double-paid an invoice and Hang Seng Bank refused to

would not, under any stretch of the imagination, be permitted to manufacture Petters brand products as described in the Manufacturing Agreement. The only interpretation of Petters argument then is that it is based on an estoppel or assumption theory.

-5-

refund the money or credit Petters' account?  Would Petters be required to arbitrate its claims against Hang Seng Bank pursuant to the Manufacturing Agreement?  The clear answer is "no" because all rights and obligations as between Petters and Hang Seng Bank derive exclusively from the Factoring Agreement.

In fact, as of the date of this pleading, all purchase order transactions between Starlite and Petters are complete.  Starlite has delivered the goods for which Petters submitted purchase orders and Starlite has been paid for those goods.  Consequently, there are no issues in the present matter arising directly from the Manufacturing Agreement or any purchase orders related thereto.  The only issues raised by the present action are related to the Factoring Agreement of which Petters was fully aware prior to submitting any purchase orders and which Petters assumed by making payments to Hang Seng Bank on Starlite's invoices.

Petters cites to *GMAC Commercial Credit LLC v. Springs Industries, Inc.*, 171 F.Supp. 2d 209 (S.D.N.Y. 2001) for its argument that Hang Seng Bank is bound by the arbitration clause of the Manufacturing Agreement.  However, *GMAC*, a non-binding district court case from the Southern District of New York, should not be followed by the Court here for several reasons.

There are no California or Minnesota cases directly on point of which Plaintiff is aware.  However, the bulk of cases, even in the State of New York, hold that a factor is not bound by an arbitration clause agreed to by an assignor.  *Lachmar v. Trunkline LNG Co.*, 753 F.2d 8 (2d Cir.1985) (appeal from New York Dist. Court) ["assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract **unless he expressly assumes to do so**"]; *Rosenthal & Rosenthal, Inc. v. John Kunstadt, Inc.*, 106 A.D.2d 277, 482 N.Y.S.2d 287 (1984); *Kaufman v. William Iselin & Co., Inc.*, 272 A.D. 578, 74 N.Y.S.2d 23 (1947); *see also Gruntal & Co., Inc. v. Ronald Steinberg, et al.*, 854 F.Supp. 324 (D.N.J.1994) (applying New York law and citing New York holdings); *United States v. Panhandle Eastern Corp., et al.*, 672 F.Supp. 149 (D.Del.1987).  The district court in *GMAC* acknowledges this line of cases, but distinguishes them on specious grounds.

The district court in *GMAC* attempts to distinguish *Lachmar* and *Kaufman* on the ground those cases only apply "where factors are 'passive', i.e. sued or joined as a third-party." *GMAC*,

1 *supra*, 171 F.Supp. 2d at 215-216. However, this distinction was not made by the *Lachmar* court

2 and fails to explain the rulings in *Rosenthal*, *Panhandle*, and *Gruntal*. The district court does not

3 address the ruling in *Gruntal*. It simply dismisses *Rosenthal* as wrongly decided based on what

4 it perceived to be a misreading of *Kaufman*. *GMAC* at 217. The district court then distinguished

5 *Panhandle* on the ground the contract of assignment in that case narrowed the scope of the

6 assignee's involvement on the underlying contract. The district court next appears to unduly

7 expand the holding in *Pays-bas* and *Panhandle* finding that the assignee in its case failed to

8 secure the third-party's "consent" to take assignment of the underlying "contract claims free

9 from the requirement to arbitrate." *GMAC* at 218. However, neither *Pays-bas* nor *Panhandle*

10 went so far. The sole requirement found in those cases for avoiding arbitration was that the

11 assignee define the scope of the assignment. There is no requirement found in those cases that

12 the third-party consent to the assignment free from the arbitration clause.

13 Here the scope of the assignment is clearly limited to the collection of accounts

14 receivable from Petters. Hang Seng Bank did not assume the right to manufacture DVD players

15 for Petters, did not assume the servicing requirements, and did not assume the quality control

16 requirements or any other obligation or right under the Manufacturing Agreement, including the

17 obligation to arbitrate. *See* Exhibit A to the Declaration of Gabriel G. Hedrick. Hang Seng Bank

18 merely accepted the right to collect on invoices issued on purchase orders issued by Petters and

19 filled by Starlite. Nothing more. Under *Lachmar* then, Hang Seng Bank did not assume any

20 other rights or obligations under the Manufacturing Agreement and certainly did not assume the

21 obligation to arbitrate any claims against Petters.

22 Additionally, this case involves facts that were not present in *GMAC*. In *GMAC*, the

23 party seeking to enforce the arbitration clause had not been notified of the assignment of the

24 accounts receivable. *See GMAC, supra*, 171 F.Supp.2d at 217 [noting exception where account

25 debtor consented to assignment]. This is in stark and material contrast to the facts here where

26 Petters was expressly told by Starlite that it would not accept any purchase order from Petters in

27 the absence of a factoring agreement. *See* Complaint, ¶10. Unlike the defendant in *GMAC*,

28 Petters had the opportunity to, but did not, insist that the factoring agreement incorporate an

1    arbitration clause requiring Hang Seng Bank to arbitrate any claims with Petters. Hang Seng

2    Bank did not assume Starlite's duty to arbitrate by entry into the Factoring Agreement. *See*

3    Exhibit A to the Declaration of Gabriel G. Hedrick.

4        Finally, Starlite, on behalf of Hang Seng Bank, is not seeking to enforce any rights under

5    the Manufacturing Agreement. Instead, Starlight is seeking to enforce Hang Seng Bank's rights

6    under the Factoring Agreement of which Petters was aware before the submission of any

7    purchase orders and which agreement Petters assumed by making payments to Hang Seng Bank

8    under the terms of the Factoring Agreement.

9                           **CONCLUSION**

10       Hang Seng Bank is not a party to the Manufacturing Agreement between Starlite and

11   Petters. Hang Seng Bank did not assume Starlite's obligation to arbitrate claims arising from the

12   Manufacturing Agreement, which concerns only manufacturing rights, when it entered into the

13   separate Factoring Agreement. Petters was notified of the Factoring Agreement prior to

14   submitting any purchase orders to Starlite and was aware the Factoring Agreement was a

15   necessary precondition to Starlite's acceptance of any purchase orders from Petters. Based on

16   the foregoing, Hang Seng Bank is not bound by the arbitration provision contained in the

17   Manufacturing Agreement.

18                                    HANDAL & ASSOCIATES

19

20

21   Dated: December 28, 2007        By:    _____

22                                          Gabriel G. Hedrick, Esq.
                                            Attorneys for Plaintiff
23

24

25

26

27

28

-8-