Christina Coates (State Bar No. 206602)
ccoates@jonesday.com
Brian L. Johnson (State Bar No. 216604)
bjohnson@jonesday.com
JONES DAY
12265 El Camino Real
Suite 200
San Diego, CA 92130
Telephone: 858.314.1200
Facsimile: 858.314.1150

David R. Marshall (MN Bar No. 184457)
S. Jamal Faleel (MN Bar No. 0320626)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: (612) 492-7000
Facsimile: (612) 492-7077
*Admitted Pro Hac Vice*

Attorneys for Defendant
PETTERS CONSUMER BRANDS, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLIGHT CONSUMER ELECTRONICS (USA), INC., (on its own behalf and on behalf of HANG SENG BANK)<br><br>Plaintiff,<br><br>v.<br><br>PETTERS CONSUMER BRANDS, LLC, and DOES 1 through 100,<br><br>Defendants. | Case No. 3:07-cv-02102-IEG-RBB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>DATE: January 14, 2008<br>TIME: 10:30 a.m.<br>DEPT: Courtroom 1<br>JUDGE: HON. IRMA E. GONZALEZ |

LAI-2923674v1

## I. INTRODUCTION

Starlight Consumer Electronics (USA) Inc. ("Starlight") and Petters Consumer Brands, LLC ("Petters") entered into a Manufacturing Agreement ("Manufacturing Agreement") that contains an arbitration clause. The arbitration clause is broad, and applies to all disputes, including disputes relating to Purchase Orders issued by Petters for consumer electronics goods. Starlight asserts that Petters owes money for consumer electronics goods delivered pursuant to Purchase Orders that it subsequently invoiced. Starlight has assigned its right to receive payment on the Purchase Orders to Hang Seng Bank ("HSB"). As the assignee of Starlight's rights, Hang Seng steps into the shoes of Starlight. Because Starlight is required to arbitrate disputes relating to the Purchase Orders, HSB is also required to arbitrate such disputes.

According to Starlight, it may simply assign the right to assert a breach for non-payment without assigning the obligation to arbitrate. If that were true, any party to a contract could avoid arbitration by assigning all provisions, except the provision regarding arbitration. The enforceability of arbitration clauses would be undermined. As one court held:

> Under this logic a party to a contract containing an arbitration clause could transfer all the substantive portions of a contract to a third party except the arbitration clause. Because the arbitration clause had not been transferred, that third party would be immune from arbitration of any contract disputes. The same scenario could apply to a party seeking to avoid a liquidated damages clause, a choice of venue or law provision, or any other remedial measure in a contract. The law can simply not allow bargained for remedial rights to be avoided so easily.

Southeastern Pennsylvania Transportation Authority v. AWS Remediation, Inc., No. Civ. A 03-695, 2003 WL 21994811, at * 3 (E.D. Pa. August 18, 2003).

## II. ARGUMENT

### A. HSB's Claims[1] Must be Arbitrated Because They Arise From and are Governed Solely by the Manufacturing Agreement.

"[A]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986). Here, despite Starlight's arguments to the contrary, the Manufacturing Agreement's arbitration clause governs the resolution of all claims in this suit.

#### 1. The Purchase Orders are expressly incorporated into the Manufacturing Agreement and serve as the exclusive contract between Petters and Starlight.

The Manufacturing Agreement "appl[ies] to *all Purchase Orders* for all products and services placed by [Petters] to [Starlight]." [Ex. B to Coates Decl. at ¶ 2a (emphasis added).] The Agreement expressly incorporates the Purchase Orders into the Manufacturing Agreement and provides that "[t]he terms and conditions in [the Manufacturing Agreement] and attached to the Purchase Orders shall be the *exclusive contract terms* between [Petters and Starlight] with respect to [Petter's] purchase of the Products." [Id. at ¶ 4b (emphasis added).]

All of Starlight's claims on behalf of HSB arise from and relate to Petters' alleged non-payment for goods delivered pursuant to these Purchase Orders. [See Def's Memo. of Points and Authorities, at pp. 4, 5, and 7.] It is undisputed that

---

[1] The Complaint, in its caption, provides that Starlight bring claims "*on its own behalf and* on behalf of Hang Seng Bank." (emphasis added.) It appears that Starlight has now abandoned all claims it brought against Petters on its own behalf in an attempt to avoid the reach of the arbitration clause, and only seeks to pursue claims on behalf of HSB. [See Pl's. Memo. of Points and Authorities, at pp. 3 and 8 ("Hang Seng Bank – not Starlight – is the real party in interest"; "Starlight . . . is not seeking to enforce any rights under the Manufacturing Agreement. Instead, Starlight is seeking to enforce Hang Seng Bank's rights under the Factoring Agreement . . . .")]

LAI-2923674v1

Starlight accepted the same Purchase Orders submitted by Petters, "reaffirm[ing] . . . its acceptance of the terms of the [Manufacturing Agreement]," and then manufactured and sold goods to Petters pursuant to the terms of these Purchase Orders. [Id. at ¶ 4b ("[a]cceptance of a Purchase Order by [Starlight] is a reaffirmation of its acceptance of the terms of [the Manufacturing Agreement], as well as an acceptance of the terms and conditions attached to each Purchase Order").]

The invoices Starlight now seeks to collect on are all invoices for goods manufactured and shipped by Starlight pursuant to the terms of the Manufacturing Agreement and the specifications of the relevant Purchase Orders. Starlight even alleges in its Complaint that its contractual claims are based on an amalgamation of "agreements as stated in the Purchase Orders, Invoices, e-mails and the accounting and book keeping systems of [HSB]." [Compl. at ¶ 22.] Because the Manufacturing Agreement and relevant Purchase Orders constitute the "exclusive contract terms" between Petters and Starlight for these consumer electronics goods, "any controversy or claim arising out of or relating to" Petters' alleged failure to pay monies due from the purchase of these consumer electronics goods must be arbitrated. [Ex. B to Coates Decl. at ¶ 21.]

  **2.**  **<u>Starlight's argument that the Manufacturing Agreement does not create an obligation to deliver consumer electronics goods or make payments is misleading and inaccurate.</u>**

Starlight claims that the Manufacturing Agreement does not impose any "obligation to deliver a product or make payment for same" and Starlight attempts to minimize the application of the Manufacturing Agreement by arguing that it only addresses Starlight's right to manufacture Petters-brand products. [Pl's. Memo. at p. 5.] Starlight's claims are misleading and inaccurate.

LAI-2923674v1

First, the Manufacturing Agreement does not, as Starlight suggests, constitute a broad licensing agreement between the parties, but only provides Starlight with the right to affix a "Polaroid" label on consumer electronic goods it manufactured for Petters.

Next, contrary to Starlight's claims, the language of the Agreement and the Purchase Orders (which are a part of the Manufacturing Agreement) identify Starlight's obligations to deliver products, and Petters' obligation to pay for them. The Manufacturing Agreement expressly contemplates that the Purchase Orders would contain much of the information concerning each party's respective obligations, including, the "identi[ty] [of] the Product ordered, the quantity thereof, price, specific delivery dates, and such other information as the Parties mutually agree," [Id. at ¶ 4a.] along with any applicable shipping delivery requirements, including the carrier or method of transportation. [Id. at ¶ 5a.] Starlight's acceptance of these Purchase Orders then created an obligation for Starlight to manufacture and deliver the goods according to the manufacturing and delivery specifications of the Purchase Orders. The Manufacturing Agreement even identifies very specific rights and remedies Petters may employ in the event Starlight fails to comply with the manufacturing and delivery specifications. [Id. at 5a, d, and 6b.]

Accordingly, Starlight's claim that the Manufacturing Agreement does not impose any obligations to deliver products or for payments for products is erroneous.

3. **Starlight's claims do not arise from a separate Factoring Agreement.**

The terms of the Factoring Agreement are irrelevant to this dispute. The Factoring Agreement merely provided a financing vehicle to give Starlight the capital necessary to fulfill Petters' purchase orders and manufacture goods pursuant

to those orders. Petters is not a party to the Factoring Agreement and has no obligations under the Factoring Agreement, which governs transactions between Starlight and HSB. The sole obligations Petters has for payment of invoices arise from its obligations outlined in the Manufacturing Agreement. Petters' payment of monies due under the invoices directly to HSB does not serve to make Petters a party to the Factoring Agreement, or form the basis for any other agreement which would create an independent right of action by HSB against Petters.

### B. HSB Is Bound By The Arbitration Clause In the Manufacturing Agreement.

#### 1. This Court should adopt the reasoning and holding in *GMAC v. Springs Industries*.

GMAC Commercial Credit, LLC v. Spring Industries, Inc., involved a suit brought by a finance assignee against a purchaser to recover monies allegedly owed for rug sets manufactured by the assignor. 171 F.Supp.2d 209, 214 (S.D. N.Y. 2001). The finance assignee, GMAC, had been assigned all accounts receivable generated by the rug manufacturer. Id. at 212. The agreement between the assignor and finance assignee expressly limited the assignment to the right to collect the assignor's accounts receivable, and expressly excluded the assignment of any other rights and obligations. Id. The finance assignee subsequently brought suit against the purchaser for monies due on unpaid purchase orders. Id. The purchaser moved to stay or dismiss the action and compel arbitration. Id. The court held "that a finance assignee suing on an assigned contract is bound by that contract's arbitration clause unless it secured a waiver from the signatory seeking to arbitrate." Id. at 214.

In arriving at its conclusion, the court rejected the argument advanced by the finance assignee that it was not bound by an arbitration clause entered into by the assignor. It characterized the assignee's reliance on a line of cases which predated

the adoption of the Uniform Commercial Code and which dated back to the first half of the century, as being misplaced. Id. at 213-14. This is the very same argument asserted by Starlight in this dispute. The GMAC court explained that "[t]he . . . common law principle that arbitration was an 'obligation' not assumed by a finance assignee was superseded by New York's adoption of the Uniform Commercial Code . . . provision 9-318(1)[2] . . . ."[3] Id. at 213. As the court observed, this UCC provision "is essentially an application of the 'elementary ancient law that an assignee never stands in any better position than his assignor. An assignee is subject to all the equities and burdens which attach to the property assigned because he received no more . . . than his assignor.'" Id. at 214 (citations omitted). Although "the UCC does distinguish finance assignments from general assignments . . . it recognizes that general assignments confer both the assignor's rights and obligations to the assignee whereas a finance assignment confers only the assignor's rights." Id. at 214 (citing UCC § 2-210(4) and Official Comment 5).

This rule, however, must be considered in light of the line of decisions which have found "that arbitration is a contractual *remedy, not an obligation,* and cannot be abrogated through a finance assignment." Id. at 214 (emphasis in original)(citing (Banque De Paris et des Pays-Bas v. Amoco Oil Co., 573 F. Supp. 1464, 1469-70 (S.D.N.Y. 1983); Cone Constructors, Inc. v. Drummond Community Bank, 754 So.2d 779 (Fla. App. 1st Dist. 2000)). It then concluded that "[t]he adoption of Article 9 of the U.C.C. means that a finance assignee suing on an assigned contract is bound by that contract's arbitration clause unless it secured a waiver from the signatory seeking to arbitrate." Id. (citing Pays-Bas, 573 F. Supp. at 1470-71.) Starlight asks this Court to disregard the sound reasoning and holding

---

[2] Now UCC § 9-404.

[3] Both California and Minnesota have adopted the identical Commercial Code provision and incorporated it into state law, thereby abrogating and superseding any common law principle that arbitration was an "obligation." See Cal. Comm. Code § 9404 Minn. Stat. § 336.9-404

LAI-2923674v1

of <u>GMAC</u>, by characterizing the decision as an aberration rather than the well-settled modern trend in the law. [Pl's. Memo. at pp. 6-7.] Starlight's argument is not persuasive and without support in the law.

A survey of the case law in this area shows that the holding and reasoning in <u>GMAC</u> has been affirmed by courts across the country. See <u>Trippe Mfg. Co. v. Niles Audio Corp.</u>, 401 F.3d 529, 533 (3rd Cir. 2005); <u>Systran Fin. Services v. Giant Cement Holding, Inc.</u>, 252 F.Supp.2d 500, 505-06 (N.D. Ohio 2003); <u>Southeastern Pennsylvania Transp. Auth.</u>, 2003 WL 21994811, at *3; <u>Oxford Commercial Funding, LLC v. Cargill, Inc.</u>, No. 00 C 4996, 2002 WL 31455989, at *4 (N.D. Ill. Oct. 31, 2002). Each of these decisions is based on the premise that an assignment to a finance assignee should not serve as a vehicle for abrogation of a contractually negotiated remedy such as arbitration, and recognizes that "[a]n arbitration provision would be of no value 'if a party could escape the effect of such a clause by assigning a claim subject to arbitration between the original parties to a third party.'" <u>Systran</u>, 252 F.Supp.2d at 506 (quoting <u>Pays-Bas</u>, 573 F. Supp. at 1470); see also <u>GMAC</u>, 171 F.Supp.2d at 216 ("Plainly, an assignment cannot alter a contract's bargained-for remedial measures, for then the assignment would change the very nature of the rights assigned")(citations omitted)).

Accordingly, this Court should follow the reasoning and holding of <u>GMAC</u> and its progeny and hold that a finance assignee is bound by the arbitration clause of the underlying agreement unless it has secured a waiver from the signatory seeking to arbitrate.

> 2. **<u>Starlight's implication that an arbitration clause can be abrogated through a finance assignment has been rejected by courts across the country.</u>**

The primary argument raised by Starlight -- that it should not be bound by the Manufacturing Agreement's arbitration clause because it only obtained the right

LAI-2923674v1

- 8 -

to receive payments from Petters -- has been expressly rejected in a case very similar to this. See Systran, 252 F.Supp.2d at 505-06. Systran involved a suit by a factor/finance assignee for unpaid invoices against a purchaser of transportation services. Id. at 502. The purchaser sought to compel arbitration, claiming that the underlying transportation services agreement between the assignor and the purchaser contained an arbitration clause. Id. The purchaser was on notice of the existing factoring arrangement and entered into the transportation services agreement with the service provider with knowledge of this agreement. Id. at 503. In responding to the purchaser's motion to compel, the factor argued that it was not required to arbitrate its claims because it was not a signatory to the underlying transportation services agreement and because it received only the right to payment of the accounts receivables. Id. at 503.

The court, after finding that the factoring agreement was governed by Article 9 of the Ohio Commercial Code,[4] held that "[w]hen an Article 9 assignee asserts collection rights against an account debtor, the account debtor may respond with a defense or claim provided by [U.C.C. § 9-404]." Id. at 506. The court also held that:

> "[r]egardless of the fact that [the factor] was only assigned the right to payment under the transportation services agreement, [the purchaser] may properly assert the arbitration agreement as a defense because arbitration was a 'term[ ] of the agreement between the account debtor and assignor.'" Id. (quoting the Ohio Commercial Code equivalent of U.C.C. 9-404).

Id. This case is no different.

Here, Starlight, on behalf of HSB, claims it should not be required to arbitrate because it only received the right to payments from Petters, but here, as was the case in Systran, this assignment does not abrogate the Manufacturing

---

[4] The version of the UCC adopted by Ohio is identical to the California and Minnesota Commercial Codes in all material respects.

LAI-2923674v1

Agreement's contractual remedy of arbitration. If HSB "did not want to arbitrate disputes over collections from account debtors, it could have contracted with [Starlight] to prevent it from entering into any agreement that contained arbitration clauses. Because it did not do so, it is bound by the [Manufacturing Agreement's] arbitration clause." Id. at 506. As set forth above, a holding to the contrary would permit any party to a contract containing an arbitration clause to escape the reach of the arbitration clause by simply assigning its payment rights under the agreement to a third-party. The law should not permit such an absurd result.

### III. CONCLUSION

For the foregoing reasons, and the reasons set forth in its Initial Memorandum and attached exhibits, Petters respectfully requests that the Court dismiss the claims asserted by Starlight, both on its own behalf, and on behalf of Hang Seng Bank, and compel Starlight to submit those claims to binding arbitration.

Dated: January 7, 2008

Respectfully Submitted,

JONES DAY

By: /s/ Christina D. Coates
Christina D. Coates

Attorneys for Defendant
PETTERS CONSUMER BRANDS, LLC

4301894

LAI-2923674v1

# CERTIFICATE OF SERVICE

I, Yvonne C. Kametani, declare:

I am a citizen of the United States and employed in San Diego County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 12265 El Camino Real, Suite 200, San Diego, California 92130. On January 7, 2008, I served a copy of the **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** by electronic transmission.

I am familiar with the United States District Court, Southern District of California's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the following CM/ECF users were served:

Anton N. Handal, Esq.
Gabriel G. Hedrick, Esq.
HANDAL & ASSOCIATES
1200 Third Avenue, Suite 1321
San Diego, CA 92101
Telephone: (619) 544-6400
ghedrick@handal-law.com
anh@handal-law.com

*Attorneys for Plaintiff STARLIGHT CONSUMER ELECTRONICS (USA), INC.*

Executed on January 7, 2008, at San Diego, California.

/s/ *Yvonne C.* Kametani
Yvonne C. Kametani

LAI-2923813v1                                                              CERTIFICATE OF SERVICE