1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  STARLIGHT CONSUMER ELECTRONICS            CASE NO. 07cv2102
    (USA), INC., (on its own behalf and on
12  behalf of HANG SENG BANK),                **ORDER GRANTING MOTION TO**
                                              **COMPEL ARBITRATION**
13                              Plaintiff,
                                              [Doc. No. 3.]
        vs.
14
15  PETTERS CONSUMER BRANDS, LLC,
    and DOES 1-100,
16
                                Defendant.
17

18          Presently before the Court is defendant Petters Consumer Brands, LLC's ("defendant") motion

19  to compel arbitration.  For the following reasons, the Court grants the motion.

20                                  BACKGROUND

21  Factual Background

22          Plaintiff Starlight Consumer Electronics ("plaintiff") is a Hong Kong-registered company

23  which manufactures consumer audio products, such as CD players and televisions, for sale to

24  customers in the United States.  Plaintiff is suing on behalf of Hang Seng Bank (hereinafter

25  "HSB"), a Hong Kong-registered financial institution.[1]  Defendant Petters Consumer Brands,

26

27  _____

28          [1]While the complaint states plaintiff is also suing on its own behalf, plaintiff's counsel informed the Court at oral
    argument plaintiff sues only on behalf of HSB.

LLC[2] (hereinafter "defendant") owns the Polaroid Brand and contracts with manufacturers in Asia to construct consumer electronics for the Polaroid Brand, which are then sold at stores in the U.S.

In January of 2005, the parties began to discuss plaintiff becoming a manufacturer of Polaroid products. Plaintiff and defendant signed a "Manufacturing Agreement" in February of 2005. (Defendant's memorandum in support of motion to compel arbitration, Doc. No. 3, Ex. B (hereinafter "Manufacturing Agreement").) The agreement grants plaintiff the non-exclusive right to produce products for defendant. The agreement anticipates individual purchase orders will identify the specific products to be manufactured, the quantity of products, and the prices. (Id. ¶¶ 2, 3, 4 & 11.)

Several of the specific terms included in the agreement are relevant to the current dispute. In one provision, the parties agreed to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement." (Id. ¶ 20.) The agreement also states it applies to each purchase order, and acceptance of any purchase order is a reaffirmance of the terms of the manufacturing agreement. (Id. ¶¶ 2(a) & 4(a).) The agreement is binding upon successors and assigns of either party. (Id. ¶ 22(i).)

In June of 2005, plaintiff and HSB signed a written "factoring agreement." (Plaintiff's response in opposition to motion, Doc. No. 6, Ex. A.)[3] The factoring agreement did not contain an arbitration clause. In the factoring agreement, plaintiff transferred to HSB plaintiff's rights to receive payment under purchase orders by defendant. When plaintiff received a purchase order from defendant, it tendered the purchase order to HSB. HSB then advanced plaintiff the value of the purchase order, less HSB's fees. Plaintiff used the money from HSB to buy its supplies and cover its expenses. Plaintiff then shipped the products to defendant, along with an invoice requesting payment to HSB.

According to the complaint, defendant initially made payments to HSB on the invoices it

---

[2]According to defendant's motion, defendant no longer exists as Petters Consumer Brands, LLC because in April of 2005, defendant merged into Polaroid Holding Company.

[3]Factoring is "the purchase of accounts receivable from a business by a 'factor' who thereby assumes the risk of loss in return for some agreed discount." Systran Fin. Servs. Corp v. Giant Cement Holding, Inc., 252 F. Supp. 2d 500, 504 n.4 (N.D. Ohio, 2003) (quoting 32 Am. Jur. 2d 6 (1995)).

1  received from plaintiff, but became in arrears in July of 2006.  Plaintiff alleges defendant currently

2  owes HSB $1,370,097.

3        The complaint raises seven causes of action: (1) breach of contract, (2) breach of the

4  covenant of good faith and fair dealing, (3) constructive fraud, (4) fraud and deceit: intentional

5  misrepresentation or suppression of material fact, (5) fraud and deceit: promise made with no

6  intention to perform, and (6) and (7), two counts of account stated.

7  Procedural Background

8

9        Plaintiff filed this action in Superior Court in San Diego County on September 26, 2007.

10  On November 2, 2007, defendant removed the case to federal court on the basis of diversity

11  jurisdiction.  (Doc. No. 1.)  On November 7, 2007, defendant filed a motion to compel arbitration.

12  (Doc. No. 3.)  Plaintiff filed an opposition on December 31, 2007 (Doc. No. 6), and plaintiff

13  replied on January 8, 2008 (Doc. No. 8).  The Court heard oral argument on January 14, 2008.

14  Gabriel Hedrick and Anton Handal of Handal and Associates appeared for plaintiff. David

15  Marshall of Fredrikson & Byron, PA and Christina Coates of Jones Day appeared for defendant.

16  The Court took the matter under submission.

17                                   DISCUSSION

18  Legal Standard

19        The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements

20  in contracts involved interstate commerce.  See 9 U.S.C. §§ 1-2; Gilmer v. Interstate/Johnson Lane

21  Corp., 500 U.S. 20, 24-26 (1991).  The FAA provides: "[a] written provision in any . . . contract

22  evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be

23  valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the

24  revocation of any contract."  9 U.S.C. § 2.  In a suit proceeding in a district court, the court "upon

25  being satisfied that the making of the agreement for arbitration or the failure to comply therewith

26  is not in issue, . . . shall make an order directing the parties to proceed to arbitration in accordance

27  with the terms of the agreement."  Id. § 4.

28        The Court must simply "determin[e] (1) whether a valid agreement to arbitrate exists, and,

                                        - 3 -                              07CV2102

1   if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho

2   Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  The second inquiry is necessary

3   because "arbitration is a matter of contract and a party cannot be required to submit to arbitration

4   any dispute which he has not agreed to so submit." Tracer Research Corp. v. Nat'l Envtl. Servs.

5   Co., 42 F.3d 1292, 1294 (9th Cir. 1994) (quoting United Steelworkers v. Warrior & Gulf

6   Navigation Co., 363 U.S. 574, 582 (1960)).  Under the ordinary contract principles which bind "an

7   intended third party beneficiary, an agent, or an assignee," a non-party may be bound by an

8   agreement to arbitrate.  Comedy Club, Inc. v. Improv W. Assoc., 502 F.3d 1100, 1109 (9th Cir.

9   2007).

10  Analysis

11
12          At oral argument, the parties agreed defendant's duty to pay for the products it ordered

    stemmed from its purchase orders. (See also Compl. ¶ 22; Opp. at 7.)  The parties also agreed the
13
    factoring agreement, entered into by HSB and plaintiff, assigned plaintiff's right to receive
14
    payments under defendant's individual purchase orders to HSB.  Defendant argues (1) the
15
    arbitration provision covers the claims raised by plaintiff and (2) HSB, as plaintiff's assignee, is
16
    bound by the arbitration provision.  The Court agrees.
17
18          The arbitration provision applies to "[a]ny controversy or claim arising out of or relating to

19  this Agreement."  (Manufacturing Agreement ¶ 20.)  Plaintiff argues the suit does not relate to the

20  manufacturing agreement and characterizes the agreement as covering only intellectual property

21  and warranties.  The agreement, however, does discuss aspects of the parties' relationship

    implicated by plaintiff's claims.  The agreement states pricing details will be set forth in specific
22
    purchase orders (id. ¶ 3(a)), and that the agreement applies to those purchase orders (id. ¶ 2(a) &
23
    4(a)).  It also sets default payment terms  (id. ¶ 11), which were apparently modified by the
24
    assignment to HSB.  Thus the present dispute over payment does relate to the manufacturing
25
    agreement and the purchase orders entered into thereunder.[4]  Accordingly, plaintiff's claims are
26

27  _____

28          [4]Defendant argues all of plaintiff's claims should be arbitrated because they all relate to the alleged failure to pay
    for goods delivered.  Plaintiff does not respond to this argument.  Once the Court determines whether there is a binding
    arbitration clause, its scope should be liberally interpreted.  "[A]n order to arbitrate the particular grievance should not be

1  within the broad scope of the arbitration clause.

2      Plaintiff also argues HSB need not arbitrate its claims, even if the claims are covered by

3  the arbitration clause, because finance assignees are not bound by arbitration provisions.  Under

4  Article 9 of the Uniform Commercial Code ("UCC"), as identically adopted by both Minnesota

5  and California, an assignee is obligated by all of the terms of the agreement between the assignor

6  and the account debtor. Minn. Stat. Ann. § 336.9-404; Cal. Com. Code § 9404.[5]  "Account

7  debtor," as defined in both statutes, is "a person obligated on an account," where an account means

8  "a right to payment of a monetary obligation. . . (i) for property that has been or is to be sold,

9  leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered."

10  Cal. Com. Code  § 9102 (a)(2)-(3); Minn. Stat. Ann. § 336.9-102(2)-(3).

11      In this case, defendant, the "account debtor," promised plaintiff payment in exchange for

12  specific goods by sending plaintiff purchase orders.  In the factoring agreement, plaintiff assigned

13  its right to receive payment from defendant to HSB, the assignee.  Thus, under the UCC, HSB is

14  bound by the terms of the agreement made between plaintiff and defendant.

15

16      Other courts applying Article 9 of the UCC have also held a factor to an arbitration clause

17  in the assigned agreement.  GMAC Commercial Credit LLC v. Springs Indus., Inc., 171 F. Supp.

18  2d 209 (S.D.N.Y. 2001) (holding factor bound by a contract's arbitration provision when it was

19  assigned the right to receive payment under the contract); see also Trippe Mfg. Co. v. Niles Audio

20  Corp., 401 F.3d 529, 533 (3d Cir. 2005); Systran Fin. Servs. Corp v. Giant Cement Holding, Inc.,

21  252 F. Supp. 2d 500 (N.D. Ohio 2003); Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F.

22  Supp. 2d 356 (S.D.N.Y. 2003); U.S. v. Panhandle E. Corp., 672 F. Supp. 149, 153 (D. Del. 1987).

23  No courts interpreting Article 9 of the U.C.C. have created an exception to arbitration provisions

24

25  denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that
   covers the asserted dispute.  Doubts should be resolved in favor of coverage."  AT&T Techs., Inv. v. Commc'ns Workers

26  of Am., 475 U.S. 643, 650 (1986).  Because the non-contractual claims all relate to failure to pay for goods delivered, all
   the claims are within the scope of the manufacturing agreement's arbitration clause.

27      [5]The contract includes a choice of law provision designating Minnesota.  At oral argument, plaintiff and defendant
   agreed the relevant law is the same in both Minnesota and California.  Cf. Systran Fin. Servs. Corp v. Giant Cement

28  Holding, Inc., 252 F. Supp. 2d 500 (N.D. Ohio, 2003) (holding choice of law issue irrelevant because all three pertinent
   states "have adopted verbatim the relevant portions of the UCC cited herein").

for finance assignees.  The Court therefore rejects plaintiff's argument <u>GMAC</u> should not be followed by this court.[6]  The <u>GMAC</u> decision is a straightforward application "of the 'elementary ancient law that an assignee never stands in any better position than his assignor.  An assignee is subject to all the equities and burdens which attach to the property assigned because he receives no more . . than his assignor.'" 171 F. Supp. 2d at 214 (internal citation omitted); 29 <u>Williston on Contracts</u> § 74:56 (4th ed.) ("Thus, [in <u>GMAC</u>,] the seller and the buyer would have been, as between themselves, subject to arbitration, and the seller's assignee, whether a finance assignee or otherwise, stood in the shoes of its assignor and was likewise subject to arbitration.").  This general principle has also been followed by courts interpreting Minnesota and California law. <u>Delacy Invs., Inc. v. Thurman</u>, 693 N.W.2d 479, 485 (Minn. Ct. App. 2005) ("[i]t is black-letter law that an assignee of a claim take no other or greater rights than the original assignor and cannot be in a better position than the assignor") (internal citations omitted); <u>see also</u> <u>Comedy Club, Inc. v. Improv W. Assoc.</u>, 502 F.3d 1100, 1109 (9th Cir. 2007) (holding under California law, arbitration provision in "[a] contract may bind non-parties such as an intended third party beneficiary, an agent, or an assignee.").  As assignee of defendant's purchase orders, HSB is bound by the arbitration clause.

CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to compel arbitration and ORDERS plaintiff to arbitrate its claims in accordance with the Manufacturing Agreement.

**IT IS SO ORDERED.**

**DATED:  January 23, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[6]Plaintiff also argues <u>GMAC</u> is inapposite because in this case, defendant had notice of the assignment.  While in <u>GMAC</u>, the account debtor did not have notice, the court stated the assignee must arbitrate "unless it secured a waiver from the signatory seeking to arbitrate. . . . notice alone would have been insufficient."  <u>Id.</u> at 214-15; <u>see also</u> <u>Systran</u>, 252 F. Supp. 2d at 508 (holding factor bound by arbitration agreement where party seeking arbitration had notice of factoring arrangement).  Indeed, it would be especially illogical not to hold plaintiff to the arbitration provision in this case because HSB, the finance assignee, actually assigned its rights back to plaintiff, the assignor.